**Roy W. KRIEGER**

v.

**The BETHESDA–CHEVY CHASE RESCUE SQUAD, A Maryland Corporation.**

Civ. A. No. N 84–738.

United States District Court, D. Maryland.

Dec. 17, 1984.

Roy W. Krieger, Washington, D.C., pro se plaintiff.

Robert C. Park, Jr., and Linowes & Blocher, Silver Spring, Md., for defendant.

## MEMORANDUM

NORTHROP, Senior District Judge.

Defendant moved, pursuant to FED.R. CIV.P. 12(b)(6), to dismiss the Complaint for failure to state a cause of action upon which relief can be granted. Count I of the Complaint sets forth a cause of action under 42 U.S.C. §§ 1983, 1985 and 1988. This Court, in reviewing the Complaint and the motion, requested the parties to brief the question of "state action" as it pertains to Count I. The parties submitted well-reasoned briefs, supplemented with exhibits and affidavits. In light of these submissions and the nature of the issue, the Court has elected to treat the motion to dismiss Count I as a motion for summary judgment pursuant to FED.R.CIV.P. 56. No hearing is necessary on the motion. Local Rule 6.

■ Under Rule 56, the burden is on the movant to demonstrate clearly that there is no genuine issue of fact. Any doubt as to the existence of such an issue is resolved against him. *E.g., Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co.*, 381 F.2d 245, 249 (4th Cir.1967). In this motion, however, it is not the facts, but rather the law as applied to the facts that is in dispute.

The nature of defendant Bethesda-Chevy Chase Rescue Squad has been thoroughly revealed by the parties. I have before me a recent publication of the defendant's describing itself in detail, a list of state- or county-owned property under control of defendant, evidence that some members of defendant who participated in plaintiff's dismissal proceeding are public officials, the by-laws and charter of the defendant, a schedule of property owned by defendant, and an affidavit from the defendant's Deputy Chief. The plaintiff has also provided the Court with an exhaustive list of the state regulations and laws that are of particular application to defendant. Finally, I have plaintiff's comprehensive factual description of defendant as set out in his Complaint which I will accept as true for purposes of this motion.

The defendant, Bethesda-Chevy Chase Rescue Squad (Rescue Squad) is a non-profit Maryland corporation, organized in 1945 and headquartered in Bethesda, Maryland. It is governed by a Board of Directors elected by the membership. The Rescue Squad is comprised of about 200 members. The members are volunteers and receive no remuneration for services. In addition, the Rescue Squad also has at least eleven (11) full-time, paid employees. These employees are paid solely by defendant. The Res-

cue Squad provides rescue, ambulance, fire-fighting support, and emergency medical services for over 600,000 people. Its primary area of responsibility is Montgomery County, Maryland. Plaintiff values defendant's assets at a minimum of two million dollars. The defendant owns its own building and surrounding real estate, as well as all its vehicles. Defendant's fleet includes five (5) ambulances, two (2) mobile intensive care units, two (2) heavy rescue trucks, a field canteen, a "mask-support unit," and miscellaneous support vehicles. In addition, the Rescue Squad has under its control the necessary infrastructure, i.e., radios, etc., needed to support its operations. Among these items is some state- or county-owned property, primarily radios, loaned to the defendant. The state- or county-owned property is reliably valued by defendant at approximately $92,900. For 1984, defendant estimates its operating expenditures to total $570,950 and its capital expenditures to total $375,500.

Both parties agree that the defendant receives no direct financial assistance from the state. Indeed, the defendant has made a conscious policy of avoiding such assistance in an attempt to foreclose excessive state involvement with its operations. To pay for its operations, the defendant depends upon private contributions and grants. Defendant does receive, however, free water and sewerage from Montgomery County. Members of defendant are also covered by Maryland's Workmen's Compensation statute. MD.ANN.CODE art. 101, § 34 (1982). They or their survivors are also eligible for some pension benefits from the state if they are disabled or killed in the line of duty. Similarly, state scholarships are available to the children of Rescue Squad members killed or disabled in the line of duty. MD.ANN.CODE art. 38A §§ 42, 42A (1957) and MD.EDUC. CODE ANN. §§ 18–601, 602 (1978). Plaintiff presents other statutes particularly applicable to the defendant, including: criminal penalties for interference with or obstruction of the rescue squad, exemption from certain state taxes, ability to enter into mutual aid agreements with the feder-al government or adjacent state jurisdictions, reimbursement for courses taken towards a degree in fire service technology, occupational disease compensation, and right to organize a group life insurance policy.

■ Plaintiff alleges a violation of 42 U.S.C. § 1983 by the defendant for violation of plaintiff's First, Fifth and Fourteenth Amendment rights. These constitutional protections asserted by plaintiff only restrain the actions of the state and not those of private individuals or entities. As the United States Supreme Court explained in *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) where a § 1983 claim is made alleging violation of constitutional rights:

> [Plaintiffs] are first bound to show that they have been deprived of a right 'secured by the Constitution and the laws' of the United States. They must secondly show that [defendant] deprived them of this right acting 'under color of any statute' of the [state]. It is clear that these two elements denote two separate areas of inquiry.

*Flagg Brothers, supra,* at 155–156, 98 S.Ct. at 1732–33.

In *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court held that satisfaction of the first requirement of Fourteenth Amendment "state action" necessarily satisfied the second requirement of § 1983 "color of state law." *Id.* at 935–36, n. 18, 102 S.Ct. at 2753. The converse is not necessarily true, however, i.e., where the action under color of state law means nothing more than action with the knowledge of and pursuant to the state law. *Id.* The critical question in this case, thus, remains whether there is state action as required by the Fourteenth Amendment, or whether the alleged infringement of plaintiff's constitutional rights were merely the acts of a private entity. *E.g., Civil Rights Cases*, 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed. 835 (1883); *Rendell-Baker v. Kohn,*

457 U.S. 830, 837, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982).

Plaintiff utilizes several theories to argue that the defendant or defendant's conduct is sufficiently attributable to the State.

## I. SYMBIOTIC RELATIONSHIP

■ A "symbiotic relationship" is found where "[t]he State has so far insinuated itself into a position of interdependence [with the private party] that it must be recognized as a joint participant in the challenged activity ...." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961).

Plaintiff has failed to establish a symbiotic relationship in this case for several reasons. First, he has shown no real "interdependence" between the public and private entities. The Court in *Burton* went to some length to describe the inescapable economic interdependency between the public parking garage and the privately owned restaurant located within the garage. *Id.* at 722–25, 81 S.Ct. at 860–61. There was a symbiosis of the functions of the public and private properties. Here, by contrast, mere loan of county- or state-owned radio or rescue equipment for use in defendant's vehicles fails to really establish that the State and the Rescue Squad are "joint participants" in any enterprise. Second, the purported joint participation must relate to the challenged activity. In *Burton*, the exclusion of blacks by the private entity was found to be a business policy designed to maintain customers, and the joint participation of the State and the restaurant was for business purposes. *Id.* at 724, 81 S.Ct. at 861. There is no relationship between the alleged expulsion of the plaintiff for exercising his First Amendment rights and the loan of state- or county-owned rescue equipment. Finally, some recent decisions even indicate that *Burton* is to be limited to its facts: a State lessor and a private lessee with the business of each contributing to the business of the other. *Eggleston v. Prince Edward Volunteer Rescue Squad*, 569 F.Supp. 1344,

1349 (E.D.Va.1983), *citing, Burton, supra,* at 726, 81 S.Ct. at 862. The Bethesda-Chevy Chase Rescue Squad owns its own building and real estate, and has no "business" relationship with the State as described in or reasonably inferred from *Burton.*

## II. PUBLIC FUNCTION

Where a private entity exercises powers traditionally or exclusively reserved to the State, "state action" has been found. *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). Plaintiff has not really tried to show that supplying rescue or ambulance services has ever been a function *exclusively* reserved to the states. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 158, 98 S.Ct. 1729, 1734, 56 L.Ed.2d 185 (1978). Nor would the Court hold such rescue or ambulance services to be such a public function. *Eggleston v. Prince Edward Volunteer Rescue Squad*, 569 F.Supp. 1344, 1350–51 (E.D.Va.1983).

Plaintiff's other argument for finding a "public function" lies in the fact that the defendant purportedly performs firefighting functions. Unquestionably, firefighting is traditionally an exclusively public function. What defendant actually does at fires, however, is assist the firefighters on the scene by providing emergency lighting and power if necessary. As an emergency medical/rescue team at the scene anyway to perform its regular duties, it is not surprising that the Rescue Squad will also help out the firefighters in any other way it can. This, however, does not make the Rescue Squad a volunteer or adjunct fire department. The Rescue Squad does not show up to fight the fire. The Rescue Squad shows up primarily to care for, rescue and transport the injured. Assisting the fire departments in an ancillary manner is not enough to convert the defendant's actions into the public function of firefighting.

Obviously, the Court cannot reasonably hold that every level of support for firefighting legally brings the supporter within

the public functions of firefighting. Otherwise, we might all be firemen. In this case, where the defendant does not participate in the management or control of the firefighting, is neither equipped to nor participates in the essential tasks of firefighting, but rather provides, only if necessary, the rather passive services of emergency light and power, and is present at the scene for its own reasons unrelated to firefighting, the Court cannot hold defendant to be engaged in the public function of firefighting.[1]

### III. STATE REGULATION

■ The mere regulation of a private entity by the State, even if extensive and detailed, is insufficient to establish State action. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477; *Eggleston v. Prince Edward Volunteer Rescue Squad,* 569 F.Supp. 1344, 1349 (E.D.Va.1983). State action is established where "there is a sufficiently close nexus between the State and the challenged action of the regulated entity [such] that the action of the latter may be fairly treated as that of the State itself." *Jackson, supra* at 351, 95 S.Ct. at 453. Despite the plethora of regulations listed by plaintiff, he has failed to show how the State mandates or encourages by regulation any of the wrongs allegedly suffered by him. No regulation has been presented that even remotely promotes curtailment of free speech or due process, or influences decisions to discharge employees.

### IV. CLOSE NEXUS BETWEEN CHALLENGED ACTIVITY AND ACTION BY STATE OFFICIALS

■ Where a private entity acts in concert with public officials to commit a prohibited act, the private entity's acts are state action. *E.g., Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 941, 102 S.Ct.

2744, 2756, 73 L.Ed.2d 482 (1982); *Adams v. Bain,* 697 F.2d 1213, 1217 (4th Cir.1982). In support of his allegation that the Rescue Squad acted in concert with public officials to discharge him, plaintiff claims that three public officials participated in his expulsion proceedings. They were the Rescue Squad's Chief Officer, Deputy Chief Officer, and Vice-President. For purposes of this motion, the Court will assume that these officers are also public officials. For purposes of this motion, the Court will assume that these three individuals actively sought and participated in plaintiff's expulsion.

These three officers of the Bethesda-Chevy Chase Rescue Squad are delegates to the Montgomery County Fire Board. The Chief Officer is also a member of the Montgomery County Fire and Rescue Commission. This, in plaintiff's opinion, makes them public officials. The Montgomery County Fire Board is composed of delegates from the various independent fire and rescue service corporations in the county. The Board elects five of the seven members of the Fire and Rescue Commission, and also serves as an advisory body to the Commission. The Fire and Rescue Commission is composed of five members chosen by the Board and two members chosen by the Montgomery County Executive and Council. The Commission sets general policy guidelines for the 18 independent fire and rescue service corporations.

■ Mere participation by a public official, however, in the affairs of a private entity obviously does not, in itself, make the entity the "State." There must be some nexus between the individual's capacity as a public official and the challenged action. As the Supreme Court made clear in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), "state action"

---

**1.** *See Charles Calvert v. Dr. Nathaniel Sharp,* 748 F.2d 861 (4th Cir., 1984). In *Charles Calvert,* a doctor who treated prison inmates under contract with the State of Maryland and was a privately employed physician without custodial or supervisory powers over the inmates was

held not to be acting under color of state law because his obligation was not to the mission of the state. Likewise, the Rescue Squad has no supervisory powers over the firefighting, or obligations to the fire department.

may be found where the public official acting in performance of his duties or, in contravention of his duties, misuses powers possessed by virtue of state law and made possible only because the official is clothed in the authority of state law. *Id.* at 184, 81 S.Ct. at 482, *relying on United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). This standard has not been broadened by subsequent decisions. A public official does not by his mere presence transubstantiate a private entity. Not every action by a public official is "state action." Plaintiff may be granted for purposes of this motion a nexus between the acts of the individuals who are public officials and the private entity, but he has not complained of any activity "clearly attributable to the State," thus resulting in *"official* lawlessness." *United States v. Price,* 383 U.S. 787, 795, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966) (emphasis added).

There is no connection between the acts of the County commissions or commissioners and the expulsion of the plaintiff. There was no allegation of use or abuse of any authority vested by the State in the named individuals in the expulsion of the plaintiff. Nor can any be credibly constructed from the facts set forth which fully describe the public entities, and the challenged activities. Plaintiff has based his theory of state action through concerted activity with public officials on the mere presence and participation in the expulsion proceedings of individuals who happen to be public officials. This has never been enough to find state action before, and it is not enough now. Otherwise, any private organization that includes public officials as functioning members might become the State regardless of the actual state *action* involved.

## V. GOVERNMENT SUPPORT OR FUNDING

The plaintiff also points out various ways the Government financially supports the Rescue Squad. The support shown, however, does not rise to even the level previously found insufficient to show state ac-

tion in a nearby district court. *Eggleston v. Prince Edward Volunteer Rescue Squad,* 569 F.Supp. 1344, 1351 (E.D.Va. 1983). Unlike the Rescue Squad in *Eggleston, supra,* the Bethesda-Chevy Chase Rescue Squad receives no direct governmental funding or subsidies. It does benefit from certain tax exemptions, and its members are eligible for workmen's compensation and group life insurance, but myriad private entities benefit in like manner. It does receive free water and sewerage service. The Court must point out, however, that the Rescue Squad in *Eggleston, supra,* received an undoubtedly more lucrative free county water and gasoline. The Rescue Squad members are also eligible for state-funded service pensions. These pensions, however, are available to relatively few individuals, and are quite modest. The state also lends some radios and other equipment to the Rescue Squad for its use. But these are on loan, and do not constitute excessive funding. It is a matter of degree whether a state's financial support of a private entity might be so excessive as to make the "private" status of the entity a fiction. The Court's review of precedent finds no support for finding any such excessive support even remotely present in this case.

Furthermore, the Supreme Court has, in effect, directed our inquiry to be about the nature and scope of the funding, not the quantity. *Blum v. Yaretsky,* 457 U.S. 991, 1011, 102 S.Ct. 2777, 2789, 73 L.Ed.2d 534 (1982). There must be a clear connection between the public funding of the private entity and the complained of expulsion of the plaintiff. *Id.* There is neither any alleged, nor can the Court reasonably infer any.

■ Having considered and rejected all of plaintiff's arguments for finding state action in this case, the Court holds that the Bethesda-Chevy Chase Rescue Squad is not the "state" for purposes of the First, Fifth or Fourteenth Amendments. Accordingly, I must dismiss in its entirety Count I of the Complaint alleging violations of 42 U.S.C. §§ 1983, 1985 and 1988.