Mary WILLIAMS, Individually; and
James Williams, Individually and as
Husband and Next Friend of Mary
Williams

v.

RICHMOND COUNTY, GEORGIA;. Sheriff Charles Webster; Captain Ray
Myers, in his Official Capacity Only;
Tina Johnson; Jim Sheppard; Richmond County Hospital Authority d/b/a
University Hospital Ambulance Service;
University Health Service, Inc., d/b/a
University Hospital Ambulance Service;
and the North River Insurance Company.

Civ. A. No. 192–39.

United States District Court,
S.D. Georgia,
Augusta Division.

Aug. 26, 1992.

John Paul Batson, Augusta, Ga., Craig T. Jones, Atlanta, Ga., Donald T. Post, Miami Beach, Fla., for plaintiffs.

Robert Carter Daniel, Jr., James Wiley Ellison, James Barnard Wall, Burnside, Wall, Daniel & Ellison, Augusta, Ga., for Richmond County, Ga., Charles Webster and Steve Buchanan.

Raymond Gordon Chadwick, Jr., Gregg Evan McDougal, Ronald Cecil Melcher, Knox & Zacks, Augusta, Ga., Gary J. Toman, Knox & Zacks, Atlanta, Ga., for Tina

Johnson, Sheppard, Richmond County Hosp. Authority, University Health Services, Inc.

John V. Burch, Timothy Jerome Burson, Bovis, Kyle & Burch, Atlanta, Ga., James Barnard Wall, Burnside, Wall, Daniel & Ellison, Augusta, Ga., for North River Ins. Co.

James Barnard Wall, Burnside, Wall, Daniel & Ellison, Augusta, Ga., for Ray Myers.

## ORDER

BOWEN, District Judge.

Plaintiffs brought this action under 42 U.S.C. § 1983, along with pendent state law claims. Before the Court is the Motion for Summary Judgment by Defendants Richmond County Hospital Authority, University Health Service, Tina Johnson, and Jim Sheppard; and the Motion for Summary Judgment by Defendants Richmond County, Sheriff Charles Webster, Captain Ray Myers, and North River Insurance.

## I. BACKGROUND

On the afternoon of November 20, 1989, deputies of the Richmond County Sheriff's Department attempted to serve an order of the Probate Judge of Richmond County to apprehend Plaintiff Mary Williams, who, according to the order, was "a mentally ill person requiring involuntary treatment." Two of Ms. Williams's brothers had submitted an affidavit stating that she presented a substantial risk of imminent harm to herself or others, "as manifested by either recent overt acts or recent expressed threats of violence which present a probability of physical injury to [herself] or other persons...."

By prearrangement, at approximately 5:00 p.m. deputies met one of Ms. Williams's brothers at the house of the other brother, where Ms. Williams was staying. The brother let the officers into the house. Ms. Williams locked herself in a back room and threatened to shoot the deputies. Officers attempted to talk Ms. Williams into coming out but were unsuccessful. A brother opened the room door

with a knife, but Ms. Williams shut the door again. A deputy grabbed the doorknob so that it would not lock and then opened the door. Ms. Williams swung or stabbed a butcher knife at him, injuring him slightly. The deputies retreated, and Ms. Williams barricaded herself in the room.

During the course of the evening deputies, a Sheriff's Department negotiator, Ms. Williams's brothers, and a minister attempted to talk Ms. Williams into coming out, but to no avail. The Richmond County Sheriff's Department SWAT team was called into action, and Defendant Ray Myers, officer in charge of the SWAT team, arrived at the scene. The SWAT team entered the house, and, approximately four hours after deputies first arrived at the location, officers fired tear gas into the room in an effort to bring Ms. Williams out.

In an attempt to make it easier to subdue her, deputies had placed a table outside the room door to cause Ms. Williams to trip as the gas forced her from the room. Ms. Williams did exit the room but avoided the table and, armed with the knife, advanced toward an officer who attempted to back away and stumbled. A nearby fellow officer who witnessed Ms. Williams's action, Deputy Steve Buchanan, responded by firing a single shot which struck Ms. Williams in the side. Deputies then handcuffed her arms behind her back and removed her from the house.

Ms. Williams, a large woman described as being obese, was placed in a prone position on a stretcher and carried to a waiting University Hospital ambulance, which deputies had earlier called for. Defendant Jim Sheppard, an emergency medical technician (EMT), drove the ambulance to University Hospital approximately two miles away; Defendant Tina Johnson, also an EMT, attended to Ms. Williams during the trip. According to the ambulance trip report signed by Sheppard and Johnson, "[a] deputy stated p[atien]t had been 'hit'," but it was "unknown what was meant by this." The report further noted that, although Ms. Williams was still handcuffed, she was

"thrashing about," and the EMT was "unable to do a[n] adequate survey due to [patient] activity." During the trip to the hospital, Ms. Williams asked if she had been shot, and Johnson said no. The bullet wound was not discovered until Ms. Williams reached the hospital and was rolled over for transfer to another stretcher. The projectile had apparently lodged near Ms. Williams's spine, and she became paralyzed.

Plaintiffs subsequently brought an action under 42 U.S.C. § 1983. Plaintiffs claim that Defendants Richmond County Hospital Authority, University Health Service, Tina Johnson, and Jim Sheppard were acting under color of state law and, by Johnson and Sheppard's alleged failure to adequately examine and immobilize Ms. Williams, were deliberately indifferent to her medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiffs also brought pendent state law claims against University Health Service (UHS), Johnson, and Sheppard. These Defendants moved for Summary Judgment.

Plaintiffs raised § 1983 claims against Defendants Richmond County, Sheriff Charles Webster, and Captain Ray Myers. Captain Myers allegedly seized the Plaintiff unreasonably in violation of the Fourth and Fourteenth Amendments to the United States Constitution by deploying the SWAT team against her. Plaintiffs also claimed that Richmond County and its Sheriff, Charles Webster, maintained policies, procedures, and customs which led to the alleged unreasonable seizure. Pendent state law claims were also included. Defendant North River Insurance (bonding company for Sheriff Charles Webster) was alleged to be liable under state law for Sheriff Webster's acts that were allegedly in breach of his bond. These Defendants also moved for Summary Judgment.

## II. THE REQUIREMENTS FOR SUMMARY JUDGMENT

■ The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing that there is no genuine dispute as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Clemons v. Dougherty County,* 684 F.2d 1365, 1368 (11th Cir.1982). The party moving for summary judgment may meet this burden upon showing that the adverse party has failed to make a showing sufficient to establish the existence of an element essential to the adverse party's case, and on which the adverse party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If any factual issue is unresolved by the motion for summary judgment, then the Court may not decide that matter. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).

■ The Court must resolve all reasonable doubts in favor of the adverse party. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981). When, however, the moving party's motion for summary judgment pierces the pleadings, the burden then shifts to the adverse party to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The adverse party cannot carry this burden by reliance on the pleadings, or by repetition of conclusory allegations contained in the complaint. *Morris v. Ross,* 663 F.2d 1032, 1033 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the adverse party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56.

The Clerk has given the adverse party notice of the motions for summary judgment, the right to file affidavits or other materials in opposition to the motion, and of the consequences of default. *See Griffith v. Wainwright,* 772 F.2d 822 (11th Cir.1985). Thus, the notice requirement of *Griffith* is satisfied. The parties having submitted any desired responses and mate-

rials in support thereof, I will now rule upon the motion.

## III. ANALYSIS

A. *Motion for Summary Judgment by Defendants Richmond County Hospital Authority, University Health Service, Tina Johnson, and Jim Sheppard.*

Once again, this Court is called upon to examine the relationship between Richmond County Hospital Authority (RCHA) and University Health Services (UHS) for purposes of an action brought under 42 U.S.C. § 1983. *See Willis v. University Health Serv., Inc.*, 804 F.Supp. 1557 (S.D.Ga.1992); *Coleman v. University Hosp.*, No. CV187–117 (S.D.Ga. Apr. 28, 1988).

42 U.S.C. § 1983 provides a cause of action for persons whose rights, privileges, or immunities secured by the Constitution or laws of the United States have been deprived "under color of any statute, ordinance, regulation, custom, or usage, of any State...." 42 U.S.C. § 1983. A governmental employer is liable under § 1983 for the acts of its employee only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the [deprivation of rights]...." *Monell v. Department of Social Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

■ Defendant UHS is a private, non-profit corporation that operates University Hospital and its ambulance service pursuant to a lease agreement with Richmond County Hospital Authority (RCHA). RCHA is a public hospital authority "created ... by resolution of the Board of Commissioners of Richmond County, pursuant to the Hospital Authorities Act...." *Richmond County Hosp. Auth. v. Richmond County*, 255 Ga. 183, 336 S.E.2d 562, 563 (1985). As such, RCHA may be liable under § 1983 for actions taken pursuant to its policies. *See Wofford v. Glynn Bruns-*

*wick Mem. Hosp.*, 864 F.2d 117, 118 (11th Cir.1989).

■ 1. RCHA asserts that it is not a proper party to this action, because it does not employ Defendant ambulance attendants Johnson and Shepherd. Plaintiffs contend there is a jury question regarding the existence of an agency relationship between RCHA and UHS arising out of the lease agreement to operate the ambulance service. Plaintiff characterizes the relationship as a delegation of policymaking and decisionmaking authority from RCHA to UHS, and asserts that the customs, practices, policies of UHS are therefore imputable to RCHA.

The lease agreement between RCHA and UHS provides, *inter alia:*

> RCHA as lessor does hereby lease to UHS, as lessee, for a term of forty (40) years, the University Hospital and its related facilities ... upon the following additional terms and conditions:
>
> . . . .. .
>
> 5. *Ambulance service.*
>
> (a) UHS shall operate the ambulance service so long as funding for such services is made available to UHS or RCHA by Richmond County.
>
> (b) ... RCHA transfers, assigns and conveys to UHS all its right, title and interest in and to the revenues payable to RCHA arising under and by virtue of the present ambulance service contract, or any successor contract, with Richmond County
>
> ....
>
> 12. *Employees and employee benefits.* All employees of RCHA shall become employees of UHS
>
> ..... UHS shall have the discretion to hire, terminate, promote or assign employees and to hire agents or independent contractors.

This is a transfer of interests between two entities that are separate in the eyes of the law. *See Richmond County Hosp. Auth.*, 336 S.E.2d at 565. UHS controls the operation of the ambulance service, and ambulance attendant employees of UHS are not employees of RCHA. RCHA cannot be

**1566**

held liable under § 1983 for the acts of UHS employees Johnson and Sheppard.

2. Defendants UHS, Johnson, and Sheppard contend that the requisite state action for purposes of a § 1983 cause of action against them is not present in this case.

■■■ "'[P]rivate conduct is fairly attributable [to state action] only when the state has had some affirmative role, albeit one of encouragement short of compulsion, *in the particular conduct underlying a claimant's civil rights grievance.'*" *National Broadcasting Co. v. Communications Workers of Am.*, 860 F.2d 1022, 1025 n. 4 (11th Cir.1988) (emphasis added). The acts of a private entity may be deemed to be state acts where: (1) there is a sufficiently close nexus between the state and the challenged action; (2) the state has so coerced or encouraged a private act that it must be considered the act of the state; and (3) the private entity exercises powers traditionally reserved exclusively to the state. *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).[1] The determination of whether there is sufficient state action by a non-state defendant to sustain a § 1983 claim must be made on a case-by-case basis. *Bailey v. McCann*, 550 F.2d 1016, 1018 (5th Cir.1977).

■■■ (a) Defendant UHS asserts that the state does not play a role in the policymaking decisions or day-to-day operations of the UHS ambulance service. In support, Defendant cites this Court's decision in *Coleman v. University Hospital*, No. CV187–117 (S.D.Ga. Apr. 28, 1988). In Coleman, this Court held that UHS as a private non-profit corporation, while "not entirely free of any vestige of state supervision," has sole and exclusive control over personnel decisions, and thus the requisite nexus between the state and termination of UHS employee was not present for purposes of a § 1983 action.

Although *Coleman* dealt with a challenged employee-termination decision, the situation here appears analogous. *Greco v. Orange Mem. Hosp. Corp.*, 513 F.2d 873 (5th Cir.1975), *cert. denied*, 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975), sheds additional light on this point.[2] In *Greco*, the plaintiff brought a § 1983 action against a private corporation that operated a hospital in a publicly-owned building leased from the county, alleging that the hospital's policy prohibiting non-therapeutic abortions was unconstitutional. There was evidence that, *inter alia*, the county built the building and owned the land and building which housed the hospital; the private hospital corporation leased the land and hospital from the county for one dollar per year and was bound under the provisions of the lease to operate the hospital as a nonprofit institution and to furnish general public medical and surgical care; and the lease required the private corporation to submit annual audits to the county and to furnish the county with any information which it felt necessary to inform the citizens about the operation and financial condition of the institution. *Id.* at 876.

Nevertheless, the Fifth Circuit affirmed the district court's dismissal on the basis that the plaintiff failed to establish state action for purposes of § 1983. The private, non-profit hospital corporation was not a state actor as to conduct of medical policy that prohibited elective abortions where the hospital's board of directors had *exclusive control of that policy under the terms of a lease agreement, and neither the county nor state had sought to regulate or influence that policy and had remained neutral with respect to implementation of that policy.* *Id.* at 880–81. "The involvement of the County [was] not sufficiently related to [implementation of the hospital's medical policy] to justify the imposition of Constitutional restrictions upon

---

**1.** "While specifically the *Blum* court spoke of holding the state liable pursuant to state action doctrine, the standard remains constant when a party seeks to hold a private actor liable under the state action doctrine." *National Broadcasting Company v. Communications Workers of Am.*, 860 F.2d 1022, 1025 n. 4 (11th Cir.1988).

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), decisions of the Fifth Circuit made prior to October 1, 1981, were made binding precedent on the Eleventh Circuit.

the daily business of the hospital." *Id.* at 882.

*Greco* is applicable to the circumstances here; the critical fact remains that under the lease agreement, UHS has all the rights, title, and interest in the ambulance service, and it also has exclusive control over personnel management. Furthermore, as previously noted, the Georgia Supreme Court determined in *Richmond County Hosp. Auth., supra,* that RCHA and UHS are separate and distinct entities in the eyes of the law, despite some overlapping personnel at the highest level. *Richmond County Hosp. Auth.,* 336 S.E.2d at 565.

There is no sufficient nexus between RCHA and the actions of UHS ambulance service personnel in this case to create § 1983 liability for UHS as a state actor. Furthermore, the state in the form of RCHA cannot be said to have coerced or encouraged UHS regarding UHS operation of the ambulance service. Finally, UHS as a private hospital corporation does not exercise powers traditionally reserved exclusively to the state. *See Greco,* 513 F.2d at 882. Therefore, there is no state action present with regard to Defendant UHS.

(b) Defendant ambulance attendants Johnson and Sheppard contend that the treatment rendered by these individuals involved the exercise of independent medical judgment, and that there was no nexus between the state and that treatment. Defendants cite Supreme Court decisions which hold that particular exercises of independent professional judgment do not involve state action. *See Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (decisions of physicians and administrators of privately owned and operated nursing home to transfer Medicaid patients not state action); *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (public defender not state actor when performing lawyer's traditional functions as counsel to criminal defendant). In *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), "[t]he Court suggested that [a] private party's challenged decisions could satisfy the state-

action requirement if they were made on the basis of some rule of decision for which the State is responsible." *West v. Atkins,* 487 U.S. 42, 52 n. 10, 108 S.Ct. 2250, 2257 n. 10, 101 L.Ed.2d 40 (1988). Where the decisions were based on independent professional judgments and not subject to state direction, there was no state action. *Id.*

■■■ If these ambulance attendants' decisions regarding the care of Ms. Williams were the exercise of independent medical judgment, there was no state action insofar as their relationship with their employer UHS is concerned. Even if those decisions were made pursuant to the customs, policies, and procedures of their employer UHS, there was no state action, because those customs, policies, and procedures regarding the ambulance service were those of a private entity (UHS) and not those of a governmental body (RCHA).

Plaintiffs argue another ground for finding state action by Defendants Johnson and Sheppard; that is, the ambulance attendants were allegedly acting under color of state law when they took custody of Plaintiff and transported her to the hospital at the request of the Sheriff's Department. Plaintiffs assert that there was state action because the ambulance service was in effect assisting police in the apprehension, transportation, and detention of a mental patient pursuant to a court order, citing *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), as the authority for support of their proposition. In *West,* the determination that there was state action by a private physician hinged upon the state's affirmative Eighth Amendment obligation to provide medical care to convicted prisoners, and the state's delegation of that particular function to the physician under contract.

In this case, Ms. Willis was not a convicted prisoner, but she was a detainee, since she was taken into custody by Richmond County Sheriff's Department deputies and then transferred in handcuffs to the care of the UHS ambulance attendants. Under the Fourteenth Amendment, the State has an obligation to provide medical care that is not deliberately indifferent to the serious

medical needs of detainees who have been injured while being apprehended by the police. *Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). Given this affirmative obligation, and the transfer of Ms. Williams in handcuffs from Sheriff's deputies to UHS personnel, it could be said there was state action present in the actions of Defendants Johnson and Sheppard.

 3. Nevertheless, even though state action arguably may have been present in the acts of Defendants Johnson and Sheppard, their treatment of Plaintiff did not violate the constitutional standard for medical care in this instance. First, there was no Eighth Amendment violation, because the protection afforded by that amendment does not apply to persons not convicted of a crime. *Revere,* 463 U.S. at 244, 103 S.Ct. at 2983. Although Plaintiff asserts an Eighth Amendment claim "[o]ut of an abundance of caution" because "there is always the possibility that the Supreme Court will rule differently," this Court must apply existing law. Accordingly, the source of Plaintiff's right to medical care as a detainee arises out of the Fourteenth Amendment, not the Eighth Amendment.

There is a dispute over how aware Johnson and Sheppard were, or should have been, of the nature of Ms. Williams's injury at the scene, and Plaintiffs assert that Johnson's and Sheppard's "fail[ure] to detect the wound or to stabilize her spine in the event there was such a wound" constituted a "complete disregard for the applicable standard of care...."

The applicable standard is care which does not show deliberate indifference to serious medical needs of the detainee. *Id.* "[D]eliberate indifference to serious medical needs ... constitutes the 'unnecessary and wanton infliction of pain'...." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

[A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a [health care provider] has been negligent in diagnosing or treating a medical condition does not state a valid [constitutional] claim of medical mistreatment....

*Id.* at 105–06, 97 S.Ct. at 292.

 Plaintiffs' § 1983 claim against Johnson and Sheppard must fail here. Whatever degree of awareness Defendants Johnson and Sheppard had, or should have had, regarding the nature of Ms. Williams's injury, the care that was afforded to Ms. Williams did *not* sink to the level of deliberate indifference to a serious medical need. Plaintiff was not refused treatment nor was access to treatment denied or delayed. To the contrary: once Ms. Williams was removed from the house, she was attended by trained medical technicians and taken immediately via ambulance to a nearby acute-care facility where she could be treated by physicians. As in *Revere,* the constitutional obligation was fulfilled by *"seeing that [the detainee] was taken promptly to a hospital that provided the treatment necessary for [her] injury."* *Revere,* 463 U.S. at 245, 103 S.Ct. at 2983 (emphasis added). Johnson and Sheppard may or may not have acted negligently in their assessment and care of the patient; that is a question for another day and another tribunal. However that question might be resolved, these Defendants' actions did not violate the Fourteenth Amendment.

**B. Motion for Summary Judgment by Defendants Richmond County, Sheriff Charles Webster, Captain Ray Myers, and North River Insurance.**

 In essence, Plaintiffs argue that Defendant Myers, by deploying the SWAT team, effected an unreasonable seizure of Ms. Williams in violation of the Fourth Amendment, and that he is liable for damages that occurred as a proximate result of this unconstitutional conduct.[3] Plaintiffs

---

**3.** Plaintiffs' Brief in Opposition to Motion for Summary Judgment by Richmond County,

further argue that Defendant Richmond County is liable for the conduct of Defendant Myers to the extent that county custom, policy, or practice was a "moving force" behind the alleged unconstitutional action of Myers, or to the extent that his actions represented official county policy.[4] Plaintiffs also argue that to the extent Sheriff Webster was involved at all in the implementation of policies and procedures which led to an unreasonable seizure of the Plaintiff, or to the extent his deliberate indifference led to the same, the County should be held liable as a matter of law for his conduct, citing this Court's decision in *Sammons v. McDonald,* No. CV189–199 (S.D.Ga. Jan. 17, 1991) (holding Sheriff of Richmond County · is final decisionmaker for purposes of establishing County liability under § 1983).

Deputy Steve Buchanan, who fired the wounding shot, is no longer a defendant in this case, having been voluntarily dismissed with prejudice pursuant to a consent order on the grounds of qualified immunity. Plaintiffs contend that his actions "are not the basis of this lawsuit." Rather, Plaintiffs' theory of the case apparently is that Ms. Williams's Fourth Amendment rights were violated because Captain Myers allegedly deployed the SWAT team unnecessarily; the tactics used by the SWAT team in removing Ms. Williams from the house were inappropriate; and that customs, policies, and procedures of Richmond County and its Sheriff led to this unreasonable seizure.

The Fourth Amendment guarantees citizens the "right to be secure in their persons ... against unreasonable ... seizures" of the person. U.S. Const. amend. IV. ."A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, ... in some way restrained the liberty of a citizen'...." *Graham v. Connor,* 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989). The reasonableness inquiry in a Fourth Amendment context "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. at 1872. The proper perspective is that of a "reasonable officer on the scene...." *Id.* at 396, 109 S.Ct. at 1872. Twenty-twenty hindsight vision is inappropriate in Fourth Amendment reasonableness analysis. *Id.*

Merely *deploying* the SWAT team was not an unreasonable seizure which raises constitutional problems. Even if law enforcement officials here arguably erred in judgment when they decided on a plan that employed potentially deadly force, such evidence falls short of a showing that there was no plausible basis in this instance for the officials' belief that this degree of force might be necessary. *See Whitley v. Albers,* 475 U.S. 312, 323, 106 S.Ct. 1078, 1086, 89 L.Ed.2d 251 (1986). In *Whitley,* a prison inmate brought an Eighth Amendment claim under 42 U.S.C. § 1983 against prison officials who worked out a plan to free an officer held hostage by inmates. The hostage was held on an upper tier of cellblocks, and the security manager planned to climb the stairs unarmed in an attempt to free the hostage. The security manager ordered one of the officers to fire a warning shot and then to shoot low at any inmate climbing the stairs to the upper tier. After the plaintiff inmate started up the stairs, one of the officers, after firing a warning shot, shot the plaintiff in the knee. *Whitley,* 475 U.S. at 314–17, 106 S.Ct. at 1081–83. The Court held that the prison officials had not acted with "obduracy and

---

Sheriff Charles Webster, Captain Ray Myers, and North River Ins. Co., at 34 n. 7.

The unreasonable seizure alleged ... occurred when Captain Myers ordered the SWAT team to go into the house, restrict Mrs. Williams' movement, and physically restrain her under circumstances in which it was foreseeable, if not virtually certain, that she would be shot. The shooting is but a conse-

quential damage which proximately resulted from the seizure....
*Id.* at 11–12.

**4.** Plaintiffs' Brief in Opposition to Motion for Summary Judgment by Richmond County, · Sheriff. Charles Webster, Captain Ray Myers, and North River Ins. Co., at 34 n. 7.

wantonness"¹ and there was no violation of the prisoner's Eighth Amendment rights. *Id.* at 322-26, 106 S.Ct. at 1085-87.

Although the question presented here is whether an official's actions were "objectively unreasonable" in violation of the Fourth Amendment, *Whitley*'s distinction between failing to meet the applicable constitutional standard of conduct and committing "ordinary errors of judgment" is appropriate. *See id.* at 322, 106 S.Ct. at 1086. As in *Whitley,* officials here "had no way of knowing what direction matters would take if they continued to negotiate or did nothing, but they had ample reason to believe that these options presented unacceptable risks." *Id.* at 323, 106 S.Ct. at 1086. There was evidence that Ms. Williams presented a substantial risk of imminent harm to herself and others. She had threatened to shoot deputies who attempted to serve a court order for evaluation. She had swung or stabbed a butcher knife at one officer, with some (albeit minor) degree of success in injuring him. Attempts at negotiating a peaceful solution had proved fruitless.

As the Supreme Court extended deference to the decision of the prison officials in *Whitley,* this Court does so to that of the Richmond County officers here. This deference "does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Id.* at 322, 106 S.Ct. at 1085. Therefore, although Plaintiffs submitted affidavits in support of their argument that use of the SWAT team was unreasonable, "[a]n expert's after-the-fact opinion that danger was not 'imminent' in no way establishes that there was no danger, or that a conclusion by the officers that it *was* imminent would have been wholly unreasonable." *Id.* at 323, 106 S.Ct. at 1086 (emphasis in original). At most this evidence establishes that the officials

arguably may have erred in judgment. *Id.* Regardless of whether it was Captain Myers or some other officer who was actually responsible for mobilizing the Special Weapons and Tactics team in this instance, it cannot be said that merely deploying a SWAT team was objectively unreasonable under the circumstances.

What of the tactics utilized by the SWAT team? Deadly force was not the first option chosen once the SWAT team arrived on the scene. Instead, tear gas was used in an effort to force Ms. Williams out of the room, and officers attempted to subdue her by tripping her as she left the room. It cannot be said that the Richmond County officers' attempts to resolve the situation were objectively unreasonable means in circumstances where Ms. Williams herself had already threatened and attempted to use deadly force. *Only after she advanced with a weapon toward an officer at close quarters was potentially deadly force finally applied against her.*⁵ Where officers acted pursuant to the request of a family member, who voluntarily admitted the officers into the home, and officers observed the Plaintiff's conduct to be irrational—even violent—and took her into custody using no more force than the circumstances warranted, there has been no deprivation of the Plaintiff's federally secured rights. *Joyce v. Ferrazzi,* 323 F.2d 931, 933 (1st Cir.1963).

There having been no deprivation of Ms. Williams's Fourth Amendment rights by Defendant Ray Myers in his utilization of the SWAT team, there is no need to reach issues of the customs, policies, and procedures of Richmond County or the actions of its Sheriff as decisionmaker. Plaintiffs' § 1983 claim against Defendants Richmond County, Sheriff Charles Webster, and Captain Ray Myers must fail.

## CONCLUSION

Accordingly, the Motion for Summary Judgment by Defendants Richmond County

---

5. Although the actions of the deputy who fired the wounding shot are not at issue here, it should be noted that where an officer has probable cause to believe that a person poses a threat of serious physical harm, either to the officer or to others, or where an officer has been threatened with a weapon, it is not constitutionally unreasonable to use deadly force where necessary to prevent the person from harming others. *See Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985).

Hospital Authority, University Health Service, Tina Johnson, and Jim Sheppard is hereby GRANTED as to all federal claims under 42 U.S.C. § 1983. There being no other federal claims against these Defendants, pendent state law claims asserted against these Defendants are DISMISSED without prejudice for want of jurisdiction.

The Motion for Summary Judgment by Defendants Richmond County, Sheriff Charles Webster, Captain Ray Myers, and North River Insurance is hereby GRANTED as to all federal claims under 42 U.S.C. § 1983. There being no other federal claims against these Defendants, pendent state law claims asserted against these defendants are DISMISSED without prejudice for want of jurisdiction.[6]

The Clerk of Court is directed to enter judgment in favor of all Defendants as to the federal claims brought under 42 U.S.C. § 1983 and dismiss the state law claims against all defendants. The Clerk is further directed to tax costs against the Plaintiffs and close the case.

ORDER ENTERED.

---

6. Plaintiffs had filed a Cross–Motion for Partial Summary Judgment against Defendants Richmond County, Sheriff Charles Webster, and Captain Ray Myers. Summary judgment having been granted for these defendants on all federal claims, and all state-law claims against these defendants having been dismissed, Plaintiffs' Cross–Motion for Partial Summary Judgment is now MOOT.