Ethel M. OSLER, individually and as Personal Representative of Viritha M. OSLER, Plaintiff,

v.

HURON VALLEY AMBULANCE IN-CORPORATED, a Michigan corporation, Kyle Niziolek, David Renton, Dennis Fowler, and Dean Lloyd, individually and in their official capacities, Defendants.

Case No. 08–14272.

United States District Court, E.D. Michigan, Southern Division.

Nov. 30, 2009.

Theophilus E. Clemons, Robinson & Associates, Southfield, MI, for Plaintiff.

Derek S. Wilczynski, Orlando L. Blanco, Blanco Wilczynski, Troy, MI, for Defendants.

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVID M. LAWSON, District Judge.

The defendants' motion for summary judgment raises the following issues: (1) whether a private ambulance company and its employees under exclusive contract to provide ambulance service to the county were engaged in state action when they injured the plaintiff's decedent during normal operations; (2) whether a judgement of dismissal in a prior state court lawsuit between the plaintiff and some but not all of the defendants in this case bars the present action; and (3) whether the individual defendants are immune from liability under the Michigan Emergency Medical Services Act. The Court believes that the first question should be answered "no," and the second "yes," obviating the need to answer the third. The defendants' motion for summary judgment, therefore, will be granted.

### I.

The facts of the case are straightforward. On October 7, 2005, defendants Kyle Niziolek and David Renton were employed as ambulance drivers by defendant Huron Valley Ambulance, Inc. (HVA). They were on a low-priority run in Ypsilanti, Michigan at 10:03 p.m., when Nizio-

lek noticed Viritha Osler "standing still" "just to the right of the hash marks in the curb lane" of Michigan Avenue. Response to Mot. for Sum. J., Ex. 1 (Niziolek dep.) at 174. Niziolek applied the brakes and swerved to the side, but he could not avoid a collision, and the ambulance struck the pedestrian, inflicting serious injuries. Hospital and autopsy records indicated that Ms. Osler was highly intoxicated at the time. When Niziolek approached Ms. Osler, she was unconscious and in critical condition.

Defendant Dean Lloyd, Niziolek's and Renton's supervisor, arrived at the scene shortly after the accident. They made a joint decision not to transport the injured Ms. Osler to the hospital. They called another ambulance, and they testified that they started to work on Ms. Osler, although some of the documentation that would have confirmed their activity apparently never was completed. After another ambulance finally arrived, Ms. Osler was taken to St. Joseph's Hospital where she was pronounced dead at 11:17 p.m.

HVA is a private corporation, which has an exclusive contract to provide ambulance service to Washtenaw County and perform the county's 911 emergency dispatch services. According to its president, Dale Berry, it also contracts with other public and private organizations such as nursing homes, hospitals, special events, Michigan International Speedway, the Compuware Arena, and managed care for health maintenance organizations. It performs all the Washtenaw County Medical Examiner's investigations, all ambulance discharge services in the county, and interfacility patient transport services under a contract with St. Joseph Mercy Health System. Several HVA employees are members or serve on boards of various governmental and quasi-governmental organizations that formulate policies and procedures govern-ing emergency medical services. For instance, vice president Roger Simpson is a member of the Washtenaw–Livingston County Medical Control Authority Board, which drafts protocols and regulations governing emergency services for Washtenaw County (which, per its contract, would apply only to HVA) and Livingston County (where HVA performs no services). The Washtenaw County Board of Commissioners appointed Simpson and another HVA employee, Leslie Patterson, as county medical examiner investigators. Simpson and four other HVA employees also serve as members of other Washtenaw County advisory and oversight boards dealing with the provision of emergency medical services. Each of these boards, however, also is populated by individuals who are not affiliated with HVA.

On June 30, 2006, the personal representative of Viritha Osler's estate filed a lawsuit in the Washtenaw County, Michigan circuit court against HVA, Niziolek, and Renton alleging that the defendants were negligent in colliding with Ms. Osler and for delaying transporting her to the hospital. Following discovery, the defendants in state court filed a motion for summary judgment claiming, as they do here, that they were immune from liability under the Michigan Emergency Medical Services Act, and the undisputed facts demonstrated that the majority of fault for the accident must be ascribed to Ms. Osler. The state court judge foreshortened the plaintiff's time to respond to the motion (while plaintiff's counsel was out of the country on vacation), and plaintiff's counsel's motion to enlarge the time for filing his brief by one day was denied. The state judge ultimately struck the plaintiff's brief after it was filed four hours late. However, it appears that some consideration was given to the response, since the ensuing order dismissing the case "for the reasons articulated by the Defendants in their brief"

noted that "even reviewing Plaintiff's late brief, Plaintiff fails to articulate any law in response to Defendant's November 23, 2009's assertion that Michigan's Emergency Medical Services Act (MCLA 333.20901 *et seq.*) bars Plaintiff's claims." Response to Mot. for Sum. J., Ex. 26.

The plaintiff appealed the dismissal, but the Michigan Court of Appeals dismissed the appeal because the "plaintiff failed to pursue her appeal in conformity with the court rules." Mot. for Sum. J., Ex. 12. It does not appear that the plaintiff pursued her state appellate remedies any further.

On October 7, 2008, the personal representative filed the present action in this Court against the state court defendants plus shift supervisor Dean Lloyd and dispatcher Dennis Fowler. In four counts, the plaintiff alleges liability under 42 U.S.C. § 1983 for a violation of the decedent's rights under the Fourth and Fourteenth Amendments (count I); supervisory liability under section 1983 against defendant Dean Lloyd (count II); violations of the Fourth and Fourteenth Amendments against Huron Valley Ambulance for failure to train and supervise its employees (count III); and ordinary and gross negligence under state law against all the defendants. After more discovery in this Court, the defendants filed a motion for summary judgment. The Court heard oral argument on November 24, 2009.

## II.

A motion for summary judgment under Fed.R.Civ.P. 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.,* 260 F.3d 574, 581 (6th Cir.2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler,* 215 F.3d 594, 599 (6th Cir.2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.,* 14 F.3d 1143, 1148 (6th Cir.1994) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala,* 205 F.3d 937, 943 (6th Cir.2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit,* 287 F.3d 527, 534 (6th Cir.2002). Thus a factual dispute which "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.1993); *see also Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. BVR Liquidating, Inc.,* 190 F.3d 768, 772 (6th Cir.1999).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for

its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir.2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir.2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir.1991). "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts." ' " *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir.2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Thus, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reason-

ably find for the plaintiff." *Ibid.* (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505) (internal quotation marks omitted).

## A. Federal claims—state action

■ Counts I, II, and III of the plaintiff's complaint are based on 42 U.S.C. § 1983, inasmuch as the plaintiff alleges that the defendants deprived her decedent of various constitutional rights. It is well recognized, however, that the Constitution protects citizens from infringement of their rights by the government, not by private parties. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (recognizing that "most rights secured by the Constitution are protected only against infringement by governments") (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Civil Rights Cases*, 109 U.S. 3, 17–18, 3 S.Ct. 18, 27 L.Ed. 835 (1883)). Consequently, to establish liability under section 1983, the plaintiff must prove that the deprivation of rights was caused by a person acting under color of state law. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir.2003).

The evidence in this case plainly establishes that Huron Valley Ambulance, Inc. is a private corporation and its employees are private actors as well. However, there are exceptions to the state action requirement. And although the Supreme Court has acknowledged that its "cases deciding when private action might be deemed that of the state have not been a model of consistency," *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 632, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (O'Connor, J., dissenting), the exceptions tend to fall into two broad categories: the "public function exception," and the "entanglement exception." *See* Chemerinsky, *Constitutional Law* at 552 (3d ed.2009).

■ Under the public function exception, a private actor can be held accountable for a constitutional violation when it exercises "powers traditionally exclusively reserved to the State." *Jackson,* 419 U.S. at 352, 95 S.Ct. 449. Under that exception, the Court has found constitutional liability against private entities administering elections, *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); *Smith v. Allwright,* 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); *Nixon v. Condon,* 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932); operating a "company town," *Marsh v. Alabama,* 326 U.S. 501, .66 S.Ct. 276, 90 L.Ed. 265 (1946); and administering private property used for a public purpose, *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966). Significantly, the Court has found that a private utility company, even under circumstances of enjoying a state-conferred monopoly, does *not* perform a public function in furnishing electrical service to its customers. *Jackson,* 419 U.S. at 352–53, 95 S.Ct. 449 ("If we were dealing with the exercise by Metropolitan of some power delegated to it by the State which is traditionally associated with sovereignty, such as eminent domain, our case would be quite a different one. But while the Pennsylvania statute imposes an obligation to furnish service on regulated utilities, it imposes no such obligation on the State. The Pennsylvania courts have rejected the contention that the furnishing of utility services is either a state function or a municipal duty."). Likewise, several other courts have found that furnishing emergency medical services, even under an exclusive contract, is not a public function. *See, e.g., McKinney v. West End Voluntary Ambulance Ass'n,* 821 F.Supp. 1013, 1018–19 (E.D.Pa.1992) (private ambulance association was not a state actor under public function test; plaintiff failed to establish that ambulance service is traditionally the exclusive pre-

rogative of the Commonwealth); *Krieger v. Bethesda–Chevy Chase Rescue Squad,* 599 F.Supp. 770, 773–74 (D.Md.1984) (rescue or ambulance service is not a public function), *aff'd without opinion,* 792 F.2d 139 (4th Cir.1986); *Eggleston v. Prince Edward Volunteer Rescue Squad, Inc.,* 569 F.Supp. 1344, 1350–51 (E.D.Va.1983) (stating that emergency transportation services are "more akin to private functions that the State may be just beginning to assume than to public functions that are traditionally governmental"), *aff'd without opinion,* 742 F.2d 1448 (4th Cir.1984); *Williams v. Richmond County, Ga.,* 804 F.Supp. 1561 (S.D.Ga.1992) (ambulance service operated by private nonpublic hospital corporation not state actor in caring for patient); *Chasse v. Humphreys,* No. 07–189–HU, 2009 WL 3334912, at *6 (D.Or. Oct. 13, 2009) (same).

That same result must be found here. Michigan's "emergency medical services act allows local units of government to provide ambulance services through contracts with 'private corporations' and 'legal entities,' which implicitly includes nonprofit corporations." *ETT Ambulance Serv. Corp. v. Rockford Ambulance, Inc.,* 204 Mich.App. 392, 399–400, 516 N.W.2d 498, 501 (1994) (citing Mich. Comp. Laws §§ 333.20948(1), 333.20908(6)). Ambulance service does not carry with it a badge of sovereignty. It does not amount to a "power[ ] traditionally exclusively reserved to the State." *Jackson,* 419 U.S. at 352–353, 95 S.Ct. 449.

■ Under the entanglement exception, a private entity may be found to be a state actor if the state has affirmatively authorized, encouraged, or facilitated the private unconstitutional conduct, or otherwise permitted a private actor to "exercise[ ] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' "

*West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (finding private physician under contract with state to provide medical services to prison inmates was a state actor) (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). Within this exception, state action by private parties has been found when the executive or judicial arm of state government has provided assistance in perpetrating unconstitutional conduct. *See, e.g., Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) (state action found where private party resorted to state courts to enforce discriminatory private deed restrictions); *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (finding state action based on the symbiotic relationship between restaurant and publicly-run parking facility leasing property to the restaurant); *North Ga. Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (using state courts and bailiffs to enforce creditor's remedies lacking in procedural due process); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (same); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (same). However, neither authorization of private conduct by law, *Flagg Bros.,* 436 U.S. at 164–65, 98 S.Ct. 1729, nor restriction by licensure or regulation alone, *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), will be sufficient to constitute state action. Instead, the Supreme Court has held that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (holding that decisions of physi-

cians and administrators of privately owned and operated nursing home to transfer Medicaid patients not state action); *see also Rendell–Baker v. Kohn,* 457 U.S. 830, 840, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (employment discharge decisions of privately owned and operated school receiving nearly all revenue from state contracts not state action). Perhaps most significant here, a private corporation whose business depends primarily on public contracts with the state does not become a state actor simply because of its "significant or even total engagement in performing public contracts." *Id.* at 840–41, 102 S.Ct. 2764.

Both sides in this case cite *Brentwood Academy v. Tennessee Secondary School Athletic Association,* 531 U.S. 288, 300, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001), the Supreme Court's most recent entanglement case, in support of their arguments. In that case, the Supreme Court found that a private state association that regulated nearly all of the state's high school athletic competitions engaged in state action when it suspended a private school from interscholastic play-off competition for a rules violation. The Court found that the private association was a state actor because of "the pervasive entwinement of state school officials in the structure of the association." *Id.* at 291, 121 S.Ct. 924. However, the Court found no entanglement in a similar case involving the National Collegiate Athletic Association, which performed the nearly identical function regulating intercollegiate athletics on a national scale. *NCAA v. Tarkanian,* 488 U.S. 179, 199, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988). The difference may be this: in *Brentwood Academy,* eighty-four percent of the TSSAA's members were public schools (the other members were private schools); the TSSAA was operated by two committees, the legislative council and the board

of control; the members of the committees were administrators from the member schools; the TSSAA enacted rules that its member schools were required to follow; all the members of the board of control were administrators from public schools; its employees were eligible under the state retirement system; and for decades the state board of education had delegated to the TSSAA the duty of "providing standards, rules and regulations for interscholastic competition in the public schools of Tennessee." *Brentwood Academy,* 531 U.S. at 292, 121 S.Ct. 924. Because of all of this, the Court concluded that "[t]he nominally private character of the Association is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards to it." *Id.* at 298, 121 S.Ct. 924.

*Brentwood Academy* provides no support for the plaintiff's state action argument, for it is readily distinguishable. HVA is not a state-wide organization that consists predominantly of public entities or public employees acting in their official capacities. It does not derive its authority to act from any power conferred by the state or county government. It does not set rules of practice; instead it is governed by the regulations and protocols promulgated by the oversight boards. The presence of some of HVA's officers and employees on the Washtenaw–Livingston Medical Control Authority Board does not convert HVA into a state actor. "Rather than looking to the number of public officials who serve on the governing board of a private institution, . . . the proper focus concerns whether the State has exercised 'coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Crowder v. Conlan,* 740 F.2d 447, 452 (6th Cir.

1984) (citing *Blum,* 457 U.S. at 1004, 102 S.Ct. 2777). HVA's conduct arises solely from its private contract to provide ambulance services to its customer, which in this case happens to be a public body. Based on the undisputed facts in the record, the Court cannot conclude that the state or local government affirmatively authorized, encouraged, or facilitated HVA's private conduct or otherwise clothed HVA with the authority of state law.

The Court finds, therefore, that the plaintiff has failed to carry her burden of proving state action as a matter of law. Consequently, the Court must dismiss counts I, II, and III of the complaint.

## B. Claim preclusion

▇▇▇ The plaintiff's complaint in this Court contains three federal claims and one state law claim, all of which the defendants say are barred by the state court judgment of dismissal. "Section 28 U.S.C. § 1738 generally requires 'federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'" *Haring v. Prosise,* 462 U.S. 306, 313, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983) (quoting *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). Application of this statute depends on the state's laws of issue preclusion and claim preclusion (although the Michigan Supreme Court "generally uses the terms 'res judicata' and 'collateral estoppel' rather than the phrases 'claim preclusion' and 'issue preclusion.'" *J.A.M. Corp. v. AARO Disposal, Inc.,* 461 Mich. 161, 168 n. 7, 600 N.W.2d 617, 620 n. 7 (1999)). Under Michigan law regarding claim preclusion, "[a] second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both

actions involve the same parties or their privies." *Dart v. Dart*, 460 Mich. 573, 586, 597 N.W.2d 82, 88 (1999). For issue preclusion to bar subsequent litigation, " 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment. In addition, the same parties must have had a full opportunity to litigate the issue, and there must be mutuality of estoppel.' " *Nummer v. Treasury Dep't*, 448 Mich. 534, 542, 533 N.W.2d 250, 253 (1995) (quoting *Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n. 3, 429 N.W.2d 169, 172 n. 3 (1988)). However, in Michigan, mutuality of estoppel is not required when claim preclusion is asserted defensively. *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 691, 677 N.W.2d 843, 850 (2004) (holing that "the lack of mutuality of estoppel should not preclude the use of collateral estoppel when it is asserted defensively to prevent a party from relitigating an issue that such party has already had a full and fair opportunity to litigate in a prior suit"); *see also Gilbert v. Ferry*, 413 F.3d 578, 580–81 (6th Cir.2005) (stating that "the *Monat* court held that mutuality was not required when collateral estoppel was being used defensively").

▪ Issue and claim preclusion generally are questions of law. *Stemler v. City of Florence*, 350 F.3d 578, 585 (6th Cir.2003). The party asserting preclusion bears the burden of proof. *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir.2008).

▪ The parties agree that the subject of the present lawsuit—the fatal auto/pedestrian accident of October 7, 2005—is the same as in the prior state court action. The theories of liability overlap as well, especially with respect to count IV of the complaint in this case. There is no dispute that the state court would have had jurisdiction over the plaintiff's section 1983 claims, had she filed them there, or that all of the present claims arise from the same transaction and occurrence as the state court claims. However, the plaintiff insists that the doctrine of claim preclusion does not operate as a bar to the present action because she never had a fair opportunity to litigate her case in state court. She says that the state court judge never reviewed the documents she submitted in opposition to the defendants' summary judgment motion and never made any factual determinations, only because the plaintiff's brief was filed four hours late. She contends that preclusion rules are to be applied sparingly and should be rejected where their application would contravene an overriding public policy or result in manifest injustice.

The plaintiff does have a valid point that the state court judge's overweening insistence on compliance with his filing deadline elevated form over substance at the expense of a proceeding that enjoyed all the hallmarks of fairness. However, plaintiff's counsel fails to explain how, after having been procedurally skewered in the trial court, he managed to misfire again (procedurally speaking) in the court of appeals. A review of the state trial court's order leaves no doubt that the matter was decided on the merits under state law. *See Kalamazoo Oil Co. v. Boerman*, 242 Mich.App. 75, 79, 618 N.W.2d 66, 69 (2000) (stating, in a case where default judgment was entered as a penalty for the defendant's failure to submit to a deposition, that the entry of a default "settles the question of liability with regard to all well-pleaded allegations and precludes the defaulting party from litigating that issue") (citation omitted). The plaintiff had a right to challenge the trial court's actions, but the appellate court likewise could insist that the plaintiff comply with its procedural rules. If plaintiff's counsel believed his

client did not get a fair shake in that court, the remedy would have been to pursue further appellate relief in the state court system, not file a mirror action in federal court. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) (explaining that the *Rooker–Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

The essence of the plaintiff's claims here—that the defendants are at fault in running over the decedent and then failing promptly to transport her to a hospital—are the same as in the state court case, although the legal theories are somewhat different. There are added defendants in the present action, but they are similarly situated to the original defendants in the state case. Since the defendants here assert a claim preclusion *defense,* lack of strict mutuality of estoppel is not an obstacle to the application of that theory. And since "the matter contested in [this] second action was or could have been resolved in the first," *Dart,* 460 Mich. at 586, 597 N.W.2d at 88, the Court must conclude that the state court judgment bars the entire present action.

### III.

The Court finds that the plaintiff has failed to establish a genuine issue of material fact on the question of state action. Therefore, the plaintiff's federal claims in counts I, II, and III must be dismissed. In addition, the doctrine of claim preclu-

sion bars all of the claims raised in the complaint.

Accordingly, the defendants' motion for summary judgment [dkt. # 36] is **GRANTED,** and the complaint is **DISMISSED WITH PREJUDICE.**